UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEPHANIE N.,[1] | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) No. 1:21-cv-2182-MG-TWP |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
| *Defendant.* | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

In March 2018, Plaintiff Stephanie N. applied for Childhood Disability Benefits ("CDB")[2] from the Social Security Administration ("SSA"), alleging a disability onset date of June 3, 1984. [Filing No. 11-2 at 196.] Her application was initially denied on April 20, 2018, [Filing No. 11-2 at 71], and upon reconsideration on July 30, 2018, [Filing No. 11-2 at 83]. Administrative Law Judge Monica LaPolt (the "ALJ") conducted a telephonic hearing on December 18, 2019. [Filing No. 11-2 at 30-59.] The ALJ issued a decision on February 4, 2020, concluding that Stephanie N. was not entitled to receive benefits. [Filing No. 11-2 at 21.] The Appeals Council denied review

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] To be eligible for Social Security Income, or Childhood Disability Benefits, a claimant must prove that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…." 42 U.S.C. § 423(d)(1)(A). To be entitled to CDB, a claimant must show that she became disabled before becoming 22 years old. *See* 42 U.S.C. § 402(d).

1

on July 3, 2021. [Filing No. 11-2 at 1-3.] On August 4, 2021, Stephanie N. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 6.] For the following reasons, the Court **AFFIRMS** the decision of the ALJ denying Stephanie N. benefits.

## I.
## STANDARD OF REVIEW[3]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers*

---

[3] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

*v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform His past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform His own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Stephanie N. was born on May 18, 1984. [Filing No. 11-6 at 1.] Stephanie N. has completed four or more years of college and has past work experience as a community youth mapper. [Filing No. 11-2 at 232.] Stephanie N.'s application alleges that she can no longer work because of low vision bilaterally, no peripheral vision on the right side, permanent neurological damage, and muscle atrophy/weakness on the right side. [Filing No. 11-2 at 226.] Following the December 2019 hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Stephanie N. was not disabled. [Filing No. 11-2 at 12-21.] Specifically, the ALJ found as follows:

- Born May 18, 1984, Stephanie N. had not attained age of 22 as of June 3, 1984, (the alleged onset date). [Filing No. 11-2 at 19.]

- At Step One, Stephanie N. had not engaged in substantial gainful activity[4] since June 3, 1984, (the alleged onset date). [Filing No. 11-2 at 19.]

---

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Two, prior to attaining the age of 22, Stephanie N. "had the following severe impairment: low vision with decreased visual acuity and visual field loss secondary to optic atrophy and right hemianopsia." [Filing No. 11-2 at 19.]

- At Step Three, prior to attaining the age of 22, Stephanie N. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 11-2 at 25.] The ALJ specifically considered Listings 2.02, 2.03, 2.04. [Filing No. 11-2 at 15-16.]

- After Step Three but before Step Four, prior to attaining the age of 22, Stephanie N. had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: [s]he was limited to work that involved occasional fine visual acuity, no peripheral vision on the right, and occasional night time vision. She needed to avoid all exposure to hazards such as unprotected heights and dangerous moving machinery." [Filing No. 11-2 at 16.]

- At Step Four, the ALJ found Stephanie N. had no past relevant work. [Filing No. 11-2 at 20.]

- At Step Five, the ALJ found that prior to attaining age 22, and considering Stephanie N.'s age, education, work experience, RFC, and testimony from the Vocational Expert ("VE"), there are jobs that exist in significant numbers in the national economy that the claimant can perform. [Filing No. 11-2 at 20.] The ALJ found that Stephanie N. has not been under a disability, as defined in the SSA, at any time prior to May 17, 2006, the date she attained age 22. [Filing No. 11-2 at 21.]

## III.
### DISCUSSION

Stephanie N. argues that: (1) the ALJ erred in finding that she is not disabled because her disabling visual conditions, as found by her 2015 disability determination, were the same before she attained the age of 22; and (2) the ALJ failed in the RFC to properly address her need to hold items to her face to work on them. [Filing No. 13 at 4.]

### A.  Visual Impairments

Stephanie N. contends that because the SSA determined that she was disabled because of her vision impairments—which she contends are the same as they were before she turned 22 in

2006—in her 2015 application for Supplemental Security Income, the ALJ erred by finding she was not disabled since before she turned 22. [Filing No. 13 at 11.]

The Commissioner argues that a disability determination in 2015 does not establish proof of disability beginning before 2006. [Filing No. 15 at 5.] The Commissioner argues that the ALJ did not find that her vision between 2002 and 2006 was the same as it was in 2015, and the ALJ was not bound by the 2015 state agency finding of disability. [Filing No. 15 at 5.] Further, the Commissioner notes Stephanie N. was not found disabled due to loss of visual efficiency or acuity in 2015, but because the state agency reviewing physician determined she lacked the ability to detect visual hazards due to vision field loss. [Filing No. 15 at 6-7.] Lastly, the Commissioner argues that the ALJ was not bound to a state agency reviewing physician's findings relating to a future period, as the 2015 determination did not assess functioning prior to 2015 and did not constitute evidence of her disability in 2006. [Filing No. 15 at 6.]

In the decision at issue, the ALJ found that Stephanie N.'s testimony, along with various reports of record, did not establish that her visual acuity met the level of severity described in Section 2.02, that while her visual field was limited, the contraction was not as severe as required by Section 2.03, and her vision impairment did not meet or equal listing 2.04 specifically for loss of visual efficiency. [Filing No. 11-2 at 16.] From a 2003 examination, the ALJ noted reports from optometrists, K. Hearne, O.D., who found Stephanie N.'s most significant problem was visual field loss and her vision was correctible to 20/50. [Filing No. 11-2 at 15.] In another 2003 examination by another optometrist, C. A. Lohmueller, O.D., she indicated that Stephanie N. had corrected visual acuity in the right eye of 20/200 and 20/50 in the left, and her visual field was limited to 25 degrees in her left eye and 35 degrees with both eyes. [Filing No. 11-2 at 16.] The ALJ then noted a 2008 report from consultative ophthalmologist Dr. M. Henry, M.D., who reported that Stephanie

N.'s distant visual acuity was correctible to 20/100 in the right eye and 20/60 in the left eye, near visual acuity was correctible to 20/50 in the right eye and 20/30 in the left eye, stating that her visual fields were constricted in both eyes. [Filing No. 11-2 at 16.] Further, the ALJ noted a state agency medical consultant calculated visual efficiency and concluded that left visual efficiency was 0.7 (70 percent) and right visual efficiency was 0.384 (38.4 percent) with total visual efficiency of 0.269 (26.9 percent). [Filing No. 11-2 at 16.] Regarding the 2015 state agency medical assessment, Dr. J. Sands, M.D., found that her visual acuity in her right eye was 20/150 and in the left eye was 20/60, stating that she could not detect visual hazards in the workplace. [Filing No. 11-2 at 106, 295.]

The Court agrees with the Commissioner on this issue. From review of the record, Stephanie N. was found disabled in 2015 because she did not have the visual fields to avoid even ordinary hazards in a workplace, not due to loss of visual efficiency or visual acuity. [Filing No. 11-2 at 106, 295.] The SSA claim for SSI was filed on July 27, 2015, and the established onset date was fixed as of that filing date. Since the onset date was after the date Stephanie N. reached the age of 22, the ALJ appropriately found the claim not material to the issue of Stephanie N.'s childhood disability. [Filing No. 11-2 at 17.] In the instant decision, the ALJ evaluated evidence of Stephanie N.'s visual capacity through evaluating the loss of visual efficiency under Sections 2.02-2.04. [Filing No. 11-2 at 15.] The ALJ found that from review of reports from Drs. Hearne and Lohmueller that her visual acuity did not meet the level of severity as described in Section 2.02 and while her visual field was limited, it was not as severe as required by Section 2.03. [Filing No. 11-2 at 16.] Further, from a report from Dr. Henry, Stephanie N.'s visual acuity did not meet the level of severity described in Section 2.04. [Filing No. 11-2 at 16.]

As such, the Court finds the ALJ built an accurate and logical bridge from the evidence in the record regarding Stephanie N.'s visual capacities prior to her attaining the age of 22 and finds no error with the ALJ's evaluation. In accordance with the standard of review, the Court further declines to reweigh the evidence of record or substitute our own judgment for that of the Commissioner. *Clifford*, 227 F.3d at 869.

**B.     RFC Assessment and Additional Limitation**

Next, Stephanie N. contends that the ALJ failed to decide whether she had an additional limitation required—to hold objects six to ten inches from her face when working on or with them. [Filing No. 13 at 15.] Stephanie N. contends that the VE was asked about a hypothetical person with the abilities and limitations that the ALJ ultimately found for her, who in addition, when doing tasks that required fine visual acuity, had to hold the work at six to ten inches from the worker's face. [Filing No. 13 at 16.] She contends that because the VE found such work would require an accommodation and relies on *Cleveland v. Policy Mgmt. Sys. Corp. et al.*, 526 U.S. 795 (1999), arguing that if she can only work with accommodations, then the SSA considers her disabled. [Filing No. 13 at 16.]

The Commissioner contends the ALJ relied on substantial evidence to find her vision impairment did not render her disabled prior to May 2006. [Filing No. 15 at 7.] The Commissioner argues that the vocational expert found Stephanie N. not disabled with or without the added limitation of holding objects six to ten inches form her face when working on or with them. [Filing No. 15 at 8.] The Commissioner maintains that Stephanie N. misconstrues the Supreme Court's finding in *Cleveland*. [Filing No. 15 at 8.]

In making a proper RFC determination, the ALJ must consider all relevant evidence in the record, even as to limitations that are not severe. *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir.

2014). From the evidence in the record, the ALJ must build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). The Seventh Circuit has explained that when posing hypotheticals to a VE, an ALJ must explicitly account for all limitations supported by the medical evidence, unless the VE has independently reviewed the medical record. *DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018).

First, the ALJ found that Stephanie N. was capable of work that involved occasional fine visual acuity, no peripheral vision on the right, occasional nighttime vision, and no exposure to hazards such as unprotected heights or dangerous moving machinery. [Filing No. 11-2 at 16.] At the hearing, Stephanie N.'s counsel asked the VE whether jobs existed for someone who, while engaging in work that required occasional fine visual acuity, had to hold their work six to ten inches from their face, to which the VE responded that "I think that would require some type of accommodation". [Filing No. 11-2 at 56-57.]

Regarding Stephanie N.'s reliance on *Cleveland*, the issue before the Supreme Court was whether a special presumption exists estopping a social security recipient from simultaneously pursuing an American with Disabilities Act discrimination claim. 526 U.S. at 797. The Court did not indicate in its opinion that the need for an accommodation is inherently work preclusive for purposes of an SSA determination. The Seventh Circuit has found that the ADA "only protects the disabled who can work with or without reasonable accommodation while SSDI does not consider reasonable accommodation at all in defining disability." *Feldman v. American Mem'l Life Ins. Co.*, 196 F.3d 783, 790 (7th Cir. 1999). The Court went on to state that "an individual might be able to work with reasonable accommodation and therefore be a 'qualified individual' under the ADA, but

9

be unable to work without reasonable accommodation and thus [be] 'totally disabled' under SSDI as well." *Id.*

From the Court's review, the ALJ did not analyze Stephanie N.'s statement regarding her need to hold workplace objects six to ten inches from her face in the RFC analysis. There is no consideration by the ALJ of the potential impact on availability of jobs because Stephanie N. needs to holding workplace objects six to ten inches from her face. It is curious that the ALJ posed such a hypothetical to the VE which included this limitation but did not include an analysis in the RFC determination. Certainly, the ALJ should have mentioned and disposed of this issue in his opinion.

However, the Seventh Circuit has previously articulated that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989). The VE identified three jobs that someone with Stephanie N.'s RFC could perform,[5] one of which was that of housekeeper, which does not require near acuity, far acuity, depth perception, accommodation, color vision, or field of vision. Dictionary of Occupational Titles, 1991 WL 672783 (1991). The additional accommodation for holding objects six to ten inches from her face would not preclude Stephanie N. from performing work as a housekeeper. Thus, the Court holds that the ALJ's failure to discuss Stephanie N.'s need to hold objects six to ten inches from her face was harmless and did not alter the ultimate result in the case.

## IV.
### CONCLUSION

---

[5] In her decision, the ALJ documented three jobs provided by the VE in response to the first hypothetical, rather than the second hypothetical. [Filing No. 11-2 at 21., 54-55.] The ALJ's decision should have reflected Stephanie N. could perform the jobs of industrial cleaner, laboratory sample carrier, and housekeeper. [Filing No. 11-2 at 55-56.] This mistake is a harmless, clerical error. *See Karr,* 989 F.3d at 513.

For the reasons detailed above, the Court **AFFIRMS** the ALJ's decision denying Stephanie N. benefits. Final judgment will issue by separate entry.

Dated: 3/27/2023

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**

11